We will move on to the second case of the day, which is the Equal Employment Opportunity Commission v. Wal-Mart Stores. That will be Appeal No. 21-1690, and we will hear first from Mr. Driscoll and McEachran. Thank you, Your Honor, and may it please the Court. My name is Jim Driscoll McEachran on behalf of the EEOC. There are three issues here in this appeal. The first is the application of Young to the striking facts of this case, where Wal-Mart had unlimited light-duty positions available, yet refused to accommodate pregnant employees with light duty, even as it accommodated other employees who were similar in their ability or inability to work. The second issue is the District Court's dismissal of the EEOC's claims on behalf of two claimants as a sanction for the inadvertently late disclosure of additional medical records, and the third is the denial of some critical discovery. But the primary issue is the application of Young, and as Wal-Mart agrees that only Steps 2 and Step 3 are at issue with this appeal, I'm going to focus on those two steps. Turning to Step 2, contrary to Wal-Mart's position, Young does require the employer to actually articulate a reason for denying accommodation to pregnant employees. You can see this in the language Young uses, where it says the employer may assert a legitimate non-discriminatory reason for denying the accommodation, and it must justify its refusal. That's pointing the emphasis towards the denial of the accommodation, and if there is a question about that, the Supreme Court immediately goes on to say that this modification to Step 2 is consistent with the PDA's basic objective, and it says that normally an employer cannot say as a legitimate non-discriminatory reason that it would be more expensive to add pregnant employees to the covered category, or that it would be less convenient to add employees to that covered category. But there would be no reason for an employer to ever have to articulate cost or convenience if it was sufficient to instead point only to the category of employees covered, and then end the analysis there. Do you think the Second Circuit erred in lag at Step 2? Yes, Your Honor, we do. We think there was not an emphasis of the parties briefing the issue there, and the analysis there was curt. We think that it wants that full analysis of Young's Step 2 that involves the clear exception for cost and convenience comes into play. It makes clear that there does need to be an explanation for the denial of the accommodation. Well, the, okay, go ahead. I know you don't like lag at Step 2, Walmart doesn't like lag at Step 3, but go ahead. That's correct, Your Honor. And I'd say that that's not the only way that Walmart's position is inconsistent with Young, because Young makes clear that it's adopting this burden-shifting approach to make sure that the PDA's objective of overruling General Electric versus Gilbert is given full effect. And in doing so, it describes Gilbert as standing for the proposition that it would be not discriminatory for an employer to deny a pregnant employee's accommodation under a policy that covered sickness or accident, and because pregnancy was neither sickness nor accident. That's, again, pointing to the idea that you can't just look at a policy, you have to look at the reason for the denial. Okay, but I guess I'm having a little trouble with this, because obviously the law treats on-the-job injuries differently than it treats all other reasons for disability, correct? Yes, Your Honor. The law, meaning workers' compensation law does, right? That's correct, Your Honor. And so Walmart and other employers, when they're dealing with employees who have on-the-job injuries, have pretty strong incentives to go above and beyond what the ADA might require, what Title VII might require, et cetera, et cetera, to try to get those folks back to work as soon as they can. I guess it's hard for me to see what's unreasonable or unfairly discriminatory about a policy that simply tries to minimize and manage those issues, and is not addressed to pregnancy or off-the-job injuries or illnesses at all. Your Honor, that's where I think the facts really highlight the importance of the Step 2 analysis, because we understand that Walmart has a policy around the job injuries, but the analysis under Young requires the question of why they denied the accommodation to pregnant employees. And so the facts may differ from employer to employee. Well, isn't the answer just, well, that's not what this policy is about? Your Honor, if I may point to language from Legge in Step 3, where it says, and we acknowledge that Legge says in Step 2 quickly, that this is a legitimate, non-discriminatory reason. But it says in Step 3 that a policy based on workers' compensation doesn't answer the question of why the employer could not also accommodate pregnant employees. And that's the question before this Court, not whether Walmart should or should not accommodate employees injured on the job, but why it did not also accommodate pregnant employees. Why isn't it a sufficient answer just to say, that's not what that policy was aimed at? Because the decision, if I may, Your Honor, is whether or not to provide the accommodation to pregnant employees. So we understand the policy says we're doing this, but what the policy doesn't say is why we can't do something else as well. And the PDA says that pregnant employees need to be treated similarly to employees similar to their ability or inability to work. And we established in the Prima Fascia case that pregnant employees are similar in their inability or inability to work to employees injured on the job. Okay. This all seems way too clever to me. For an employer who says, I've got a problem I need to address with on-the-job injuries. And the EEOC then comes in and says, ah, if you're going to do that, then you also have to take or at least justify much more carefully this next, your failure to go further. I apologize, Your Honor. Go ahead. No. What I was going to say is I think that goes to the idea that Walmart's put forward that this is a most favored nation approach. That's one of my questions. It sure sounds like it. And I don't think it is, Your Honor, because as the most favored nation approach that Young described was a categorical rule where liability would attach whenever an employer gave an employee to one set of employees and did not give that accommodation to pregnant employees. The inquiry would end there. And that's not what Young established. All Young asks employers to do is articulate a reason why they cannot deny or excuse me, why they cannot provide accommodations to pregnant employees as well. Liability does not attach immediately once the Prima Fascia case is met. We ask the employer, why aren't you able to accommodate pregnant employees as well? And that would be a fact-specific inquiry where an employer could provide reasons. And there may be reasons for an employer to say, this is what we're able to do on light duty. We can't do anything else for these reasons. Walmart noticeably didn't do that here. Walmart, it's undisputed, had unlimited light duty positions available. It's undisputed that accommodating pregnant employees would not impair its ability to provide light duty accommodations to employees injured on the job. And we know it would be feasible to accommodate pregnant employees with light duty because Walmart ultimately did accommodate pregnant employees with light duty starting in 2017. And they never argued it was infeasible, did they? Well, Your Honor, we asked them for a stipulation before the lower court that they would rely only on their policy, and they denied it. And even in their response brief on page 52, they contest when we say that accommodating pregnant employees would have no operational impact. That's different. I think they're related, Your Honor. No operational impact is a very, very strong statement. I can understand why that would not be stipulated. But I'm jumping ahead a little bit to your discovery concerns, where it seems to me you've got a pretty clear rule 407 problem by trying to pounce on the fact that Walmart changed its policy. Your Honor, if I may, briefly on the discovery. So that 407 issue would go to some of the discovery sought, and we'd point to the court's decision in Adams where it says that 407 does not bar evidence that's introduced for feasibility. And it does matter whether or not Walmart can. Well, it depends on whether they're arguing it. That's correct, Your Honor. As I said, there are reasons why we believe it is not set that they're not going to argue feasibility of this policy trial. I'm just going to go ahead and ask you, given that Walmart changed its policy, why didn't the EEOC just declare victory and go home? Your Honor, there are 13 claims. Instead, you're arguing we need punitive damages against them. Your Honor, there are 13 claimants here before the sanction order that dismissed two of them who suffered damages because of the discrimination that occurred between 2014 and 2017. So we're seeking relief for those claimants here. And I just want to say briefly, if this court does not adopt our position on step two, we think the district court erred at step three as well, where they needed to balance the burden on pregnant employees against the justification that Walmart offered. Here the evidence of burden was significant. It's undisputed that Walmart categorically excluded pregnant employees from light-duty accommodation. And as the Second Circuit said in Legge, that is evidence under Young of a significant burden, even where it's unclear how many non-pregnant employees received light-duty as accommodation. Now Walmart's going to say- I'd like to just make one comparison. I'm sorry, I'm somewhere else. No, that's just fine. As far as when you're talking about pregnancy and an injury on the job, did you start comparing those? Do you have to go and say, well, pregnancy is similar to an injury? And then the question is, how many months into the pregnancy does it reach that condition? And that's where I sort of perplexed with this case. What is the definition of a pregnant employee? Some operate, we all know somebody who's pregnant or had babies and how everybody's different. Some are more tolerable. Somebody has more kids. There's all kinds of other variances here. That's how I'm trying to figure out is, is it come down to a fact that there's pregnancy has to be labeled as some sort of an injury comparable to what somebody's benefit someone gets from being injured on the job? Your Honor, the party stipulated before the district court that pregnant employees were I think answers that question for this case. And with regard to the balance here, if the district, we think there's sufficient evidence of burden and an absence of justification that would justify entry of summary judgment. Part of the challenge for us there is that there's some broad language in Young. What is significant burden? What is sufficiently strong? And we have a district court opinion here, very thorough, for the moment put to the side the sanctions issue or the discovery issue. And this step three analysis is one in which we're attempting to apply some broad language. Are we allowed to rely on the underlying Wisconsin rules like Wisconsin, like Wisconsin, the workers' compensation act or the department of workforce development, those studies they did with regard to the associate time? Are we allowed to rely on that for purposes of assessing whether the justifications were sufficiently strong? Your Honor, I think it would be a stretch to do so. Walmart pointed to its TAD policy as its justification for excluding pregnant employees. And at best that included by reference the Wisconsin documents that were cited below. But I think what's important when we balance those two things is we've got this evidence of burden and the district court acknowledged that there was evidence of a burden, but it never balanced that against the justification Walmart provided. Now we argue that Walmart did not provide any justification at all, but even if we accept the pro forma justification that it may rely on its TAD policy, as like said, that doesn't answer the question of whether they could also accommodate pregnant employees. This does not mean that as Walmart suggests that pregnant employees would always win if you accept this burden analysis because it's a balance and either this court can find there's not a disputed material fact because of the strong evidence of burden and the light to non-existent evidence of justification, or there would be a question of fact for the jury to resolve. I'd just like to flag that we also think it's extraordinarily significant that the district court imposed such a draconian sanction without a finding of culpability where the evidence did not justify that culpability. Was there something unclear about the multiple warnings you all received? Your Honor, the warnings don't stand in for a finding of culpability. That's not an answer to my question. I'm sorry. Could you repeat your question? Perhaps I misunderstood. Was there something unclear about the multiple warnings you all received about providing this discovery on time? No, Your Honor. And it's correct that the EEOC repeatedly resisted allowing Walmart to seek this discovery independently, correct? Your Honor, there are important reasons for the EEOC. That's not my question. I apologize. Your Honor, yes, we did seek for important reasons to produce these records ourselves, and the magistrate acknowledged those important reasons. Those important reasons were indulged, respected, and then you blew the deadlines repeatedly, right? Your Honor, there is ambiguity about the 30-day deadline, which was clarified in the March hearing, and the EEOC produced all medical records for claimants within 10 days of that hearing. All claimants were then ultimately deposed with medical records. We think that that's not sufficient evidence of culpability, but I would like to reserve the remainder of my time for rebuttal, if I may. If you may. Thank you, Your Honor. Ms. Malik for Walmart. Good morning, Your Honors. Marissa Malik on behalf of Walmart. The district court faithfully applied Young v. UPS in granting summary judgment to Walmart. This court should affirm, which would meet its need to deal with two discovery issues that the district court acted well within its discretion in deciding. Young resolved several issues that foreclosed EEOC's position here. One, the ultimate inquiry in this case is not substantial burden. It's whether or not the employee can show that the employer has engaged in intentional discrimination. That's at 211 and 212 in Young. The opinion in Young says, where a case involves the application of the second clause of the PDA to district treatment case like this one, liability depends on whether or not the protected trait, that is pregnancy, actually motivated the employer's decision. Second, Young establishes that intentional disparate treatment can be proven through direct evidence or through the burden-shifting framework set out in McDonnell Douglas. And the court reasons that employers can implement policies that are not intended to harm pregnant women, even if their interpretation sometimes harms those members, so long as the employer has a legitimate, non-discriminatory reason for acting. In other words... Is this a question of harm or just not helping? That is, take an employer's obligation to accommodate workers who face various physical or other challenges, right? We have the ADA. Yes, Your Honor. That's not at issue here. But at least what it seems to me is we've got a policy. Walmart says, okay, here's a group of people. We have a special legal responsibility and liabilities there. We are going to address them. Yes, Your Honor. That is correct. Without worrying about pregnancy, off-the-job illnesses, off-the-job injuries, weekend softball warrior injuries and the like at all. That's right, Your Honor. And under the ADA policy, pregnant women were accommodated in the same way that everyone else that was subject to that policy was accommodated. This is a situation in which there is a group that is owed a special duty. That is something that is left open and young, and not even open, but established and young as being a neutral policy. And you know this from young, because they didn't remand on step two. They only remanded on step three. And Justice Alito's concurrence makes that point clear. Both Legg and Durham also make that point clear. So Walmart has absolutely established its burden at step two. Okay, so Legg helps you on step two. You don't like it on step three. Your Honor, we don't mind Legg on step three, because we think that Legg actually does have the right analysis, and it's focused on pretext. Again, the ultimate question in this case is, was there pretext? And what Legg established was there was pretext. That's because of the inconsistency in the use of it? Yes, Your Honor. That's putting a lot of weight on the inconsistency, correct? I don't think so, Your Honor, because if you look at what Legg says, at what their justification was for the policy, they barely had one. There was one guy who mentioned a policy, a statute from New York, the workers' comp statute, but didn't explain it. And then there were other people who justified the decision in other ways. Some people said, well, I want them to approve sick leave. Some people said, oh, no, I want to protect this woman. And another person points to the costs. And that is pure pretext, Your Honor. Here you have a policy that deviated not one bit. And this is a problem with their argument on step three. Because there is one way to establish pretext, as the court explains. That is to look both at the substantial burden and whether or not the justifications outweigh that. But that is ultimately a pretext inquiry. And that's why in Young, you had so many exceptions. And that's why there was enough facts there for it to go to the jury. If you look at Young, they accommodated ADA employees. They accommodated people injured on the job. They accommodated two people injured off the job, one with cancer and one with an ankle injury. They were accommodating huge groups of people so that it looked like pretext. As a question that was in Young, if UPS could accommodate so many, why isn't it accommodating pregnant women? Here, that is not the case. Here, the only persons who were accommodated with light duty were people injured on the job. And there were reasons for that, Your Honors, that were particular to people injured on the job. So you hear a lot from the EEOC that says, well, we need to explain why it didn't apply to pregnant women. But Your Honors, it's just the flip side of the reasons that we provide. The reasons are we have a workers' comp policy. The Department of Wisconsin Workforce has decided that we want to encourage people to pay some indemnity to them if they're taken off the job. So that's one reason. That simply does not apply to pregnant women. Another reason is that Wisconsin has a finding that says people who are injured on the job actually recover faster if they're in the workplace. And at step two, this is just a burden of production. It's not a burden of persuasion. So the idea that we have to really grapple with that finding, that is not held in young at all. And that would be antithetical to all of Title VII jurisprudence in this area. I gather that the 30B6 witness had a little trouble explaining this rationale. Did I misunderstand that? So he pointed to the TAD policy in the record. And the TAD policy has all of these reasons that I just listed, including another reason I didn't list that also doesn't apply to pregnant women in the same way, is the sense of a duty to protect people who are injured on the job and give them accommodations. You're going into Walmart. You're injured on the job. Walmart wants to show you that they care about you, so they're going to accommodate you when you're injured at their behest. That, again, does not apply to pregnant women. Not a single one of these reasons were ever questioned. Nobody had any evidence that these were pretextual reasons. And so the district court correctly decided, in accordance with Legg and Durham and Young, that the second step was met. And so the burden switches to the EEOC to demonstrate pretext, which it did not do here. So, again, like I said, Young provides two ways of doing this. One is to look at are there pregnant women who are substantially burdened? Are the employer's reasons sufficiently strong to justify the burden? What does that do? It gives rise to intentional discrimination. And that's really where we need to focus. Ms. Malik, what emphasis should we place on the EEOC's presentation or lack of presentation about evidence on the percentage of non-pregnant workers not injured on the job which were provided accommodations or forced to take leave? Your Honor, I think that is why they lose. It's their burden at step three. If they wanted to do a non-traditional pretext kind of reasoning, like they did in Legg, they could show percentages. And the opinion in Young makes that very clear. It says, to show a substantial burden on pregnant women, one way to get to the juror is to compare the percentage of pregnant women compared to the people who are not accommodated, who are not pregnant. The EEOC simply didn't even try to do that. Frankly, I think if they did try to do that, they would have realized there's no discrimination here, because 100% of people not injured on the job were not accommodated. It's a challenge, though, because we're talking about a figure that could be anywhere from 5% to 100%. And what is large? That's a challenge when you're applying Young. Now, I understand Young might not have used crystal clear language with regard to some of these concepts. But when we're applying Young in that manner, it sounds to me like the parties are asking us to make an assumption with regard to what that other number is. Yeah. We're not asking you to make any assumption, Your Honor. We are asking that the EEOC meet its burden at step three, which was to at least establish and make an argument as a type of percentage. That was their burden at step three. And they didn't even try. In fact, they asked Walmart for evidence of people who were accommodated with leave or an ADA accommodation who are not injured on the job. And it was a rather large number, Your Honor. That's why you don't see it in their papers. It's because really what they're trying to do... Sorry, Your Honor. Say that again. What the number of people who were injured but not on the job. So people who were injured off the job who applied for accommodations, 100% of them got ADA, not TAD accommodations. So if you look at just the sheer numbers, you've got 100% of pregnant women who are not injured on the job excluded. You've got 100% of people who are injured off the job who are excluded. Do we know in raw numbers how many of these different groups make up? On-the-job injury, pregnant, off-the-job injuries. We don't know the raw numbers exactly because that was EEOC's burden and they failed to proffer that evidence. However, there is record evidence that there were people who were... 54 disabled associates were accommodated, but none were assigned TAD or light duty. That's under the ADA. Under the ADA policy. That's right. And then of those, eight male associates were placed on a leave of absence after requesting an accommodation for lifting restrictions. So even if you just look at that, you know, eight versus 11, that's fairly close, Your Honor. And again, what we're really getting away from is the fact that Young makes it very clear that it's an intentional discrimination case. The question ultimately is, did pregnancy motivate EEOC's application of this policy? No. Walmart's. I'm sorry. Walmart's application. Thank you, Your Honor. And the answer is no. That is very clear from the record. Could I ask you about a point you made in your jurisdictional statement? You suggested we don't have jurisdiction to reverse and grant direct entry of summary judgment to the EEOC. Yes, Your Honor. Are you serious about that? Well, a couple of responses to that. The cases that they cite are all Declaratory Judgment Act cases, so there is no work to be done. Here, there is work to be done. They would still have to establish pretext. That's not jurisdiction. Yes. As to jurisdiction, we don't think that there is a final judgment in their favor. There's not. There's a final judgment from the district court in your favor. That is correct, Your Honor. That gives us jurisdiction over everything. I was astonished to see this argument in your brief. We routinely reverse on cross motions for summary judgment and direct entry of summary judgment in favor of the losing party. I mean, not every day, but Taylor against Hughes is a reason from earlier this year. It was a good example. If there's a final judgment, we've got jurisdiction over everything that comes up. Okay? Okay, Your Honor. I completely concede that, but I think even if you were to have jurisdiction in this case, there's simply not enough evidence. Yes. If you have, yes, Your Honor, but with respect to the record, it just simply doesn't support reversing summary judgment in EEOC. That argument, I understand. Thank you, Your Honor. Ms. Malik, do you want to address this disconnect between Judge Crabb's finding, if we want to characterize that, of inadvertence, but then the dismissal of the two plaintiffs? Absolutely, Your Honor. The standard in a case like this one, where there's been five warnings and three discovery violations already established, is fault or bad faith or willfulness. In this case, it's fault. What fault is isn't fault in the way we might think, oh, you're at fault. It's fault is gross negligence, and that's exactly what happened here. EEOC was given five warnings on five separate occasions, and I do want to say one thing to my friend on the other side, who mentioned we gave them all the documents eventually. We don't know that that's true, Your Honor. There are still documents that Walmart is missing. Walmart still does not know what it does not know. There was no situations in which these documents were given on time. They were given days late, very close to the deadlines, such that Walmart couldn't really prepare a defense, and that is why these two claimants were struck. These two claimants were particularly prejudicial. So one, Sontag, Walmart discovered that the EEOC only gave them about half the documents, and they knew this through Sedgwick, which was their claim administrator. But they still don't have all of the documents from that instance. But the two documents that they did discover that they didn't have involved situations where this particular claimant actually asked her doctor to give her a medical restriction to get her off work, and the doctor says, no, I don't think it's appropriate. In another situation with this same person, she had wanted to get lifting restrictions, and her doctor said, I don't think that's appropriate either, and she wanted to take FMLA leave, not because of pregnancy issues, but because she wanted to get off work. This is all really relevant evidence that Walmart was never given and only discovered belatedly during this woman's deposition. Now, with respect to claimant Hayworth, she had about 600 pages given to her right before her deposition, and that deposition was already pretty particularly close to the deadline, right? And so they needed to reschedule this woman's definition, trust that the EEOC has given them everything, and this really was the way the EEOC litigated this case. They demanded to be in charge of these records. They got these records. They sent them to a vendor because they wanted to redact things that they didn't think Walmart should see, even though Walmart time and time and time again wanted to be in charge of this process. So with five warnings and two discovery violations, Your Honor, the Seventh Circuit has time and that's well within the abuse of discretion. If Your Honors don't have any other questions, thank you. All right. Thank you, Ms. Malik. Rebuttal? Mr. Driscoll-McEachrin? Did I do better that time? You did perfectly. Thank you, Your Honor. Briefly, a young is about justification. So when Walmart points to pretext, that's an alternate basis. That was available even under Gilbert. You agree, though, it is ultimately a question of intentional discrimination against pregnant women. Absolutely. And what young says is that the ultimate question to prove intentional discrimination is why when the employer could accommodate so many, it could not also accommodate pregnant employees. The flip side argument that Walmart makes points to the importance of the facts here, why this could be a question of fact for the jury. This isn't a question where one employee wins and another loses. There are unlimited TAD positions available. Giving light duty to one employee doesn't explain why you could not give it to another. The evidence that Walmart provided about other accommodations was disputed before the lower court, and the district court did not rely on it. Briefly on the other, this is ultimately that balancing question. We think there's enough here for a summary judgment, but that categorical exclusion is striking also by the numbers. 100% of pregnant employers are denied, and 89 employees were given 100 different light duty assignments. We think that's evidence that at minimum a jury can consider a burden imbalance against what we think is an absent or a pro forma justification that would require an assessment of fact how those go together. On the sanctions, again, we produced those records. We had produced records with regard to the issues that Walmart just mentioned. I see my time is up. Finish the thought. So they were not prejudiced. We worked with them to continue depositions. They were able to take those depositions. The culpability was not there. Thank you, Your Honors, for your time. I appreciate it. Thank you. Thanks to both counsel. The case is taken under advisement.